Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

Southern District of West Virginia

_____ Division

FILED

AUG 2 8 2017

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

Richard Bibbs )
)
)
_____ )
**Plaintiff(s)** )
*(Write the full name of each plaintiff who is filing this complaint.* )
*If the names of all the plaintiffs cannot fit in the space above,* )
*please write "see attached" in the space and attach an additional* )
*page with the full list of names.)* )
-v- )
)
)
)
)
see Attached )
_____ )
**Defendant(s)** )
*(Write the full name of each defendant who is being sued. If the* )
*names of all the defendants cannot fit in the space above, please* )
*write "see attached" in the space and attach an additional page* )
*with the full list of names.)* )

Case No. 2:17 - 3885
*(to be filled in by the Clerk's Office)*

Jury Trial:  *(check one)*  ☑ Yes ☐ No

## COMPLAINT FOR A CIVIL CASE

### I.     The Parties to This Complaint

#### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Richard Bibbs |
| Street Address | 23 Bibbs Lane |
| City and County | Glen Jean     Fayette |
| State and Zip Code | W. Va. 25846 |
| Telephone Number | 304-469-2121 |
| E-mail Address | RBIBBS44@msn.com |

#### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**Defendant No. 1**

Name      National Park Service (~~NPS~~

Job or Title *(if known)*    govt. entity

Street Address      104 Main Street

City and County      Glen Jean   Fayette

State and Zip Code    W. Va. 25846

Telephone Number

E-mail Address *(if known)*   (?) nps@gov

**Defendant No. 2**

Name      Lizzie Watts

Job or Title *(if known)*    Superintendant

Street Address      104 Main Street

City and County      Glen Jean   Fayette

State and Zip Code    W. Va. 25846

Telephone Number    unknown

E-mail Address *(if known)*   unknown

**Defendant No. 3**

Name      Unknown Ranger A

Job or Title *(if known)*    PARK RANGER

Street Address      104 main Street

City and County      ~~Fayette~~ Glen Jean   Fayette

State and Zip Code    W. VA. 25846

Telephone Number    unknown

E-mail Address *(if known)*   unknown

**Defendant No. 4**

Name      unknown Ranger B

Job or Title *(if known)*    PARK RANGER

Street Address      104 Main Street

City and County      Glen Jean, Fayette

State and Zip Code    W. VA. 25846

Telephone Number    unknown

E-mail Address *(if known)*   unknown

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1
    Name    Fayette County Sherriff Department
    Job or Title *(if known)*    public entity
    Street Address    100 Court St.
    City and County    Fayetteville, Fayette
    State and Zip Code    W. Va. 25840
    Telephone Number    unknown
    E-mail Address *(if known)*    unknown

Defendant No. 2
    Name    Michael Fridley
    Job or Title *(if known)*    Sherriff
    Street Address    100 Court St.
    City and County    Fayetteville, Fayette
    State and Zip Code    WVa 25840
    Telephone Number    unknown
    E-mail Address *(if known)*    unknown

Defendant No. 3
    Name    E. A. Shrewsbury
    Job or Title *(if known)*    Deputy
    Street Address    100 Court St.
    City and County    Fayetteville, Fayette
    State and Zip Code    W. Va. 25840
    Telephone Number    unknown
    E-mail Address *(if known)*    unknown

Defendant No. 4
    Name
    Job or Title *(if known)*
    Street Address
    City and County
    State and Zip Code
    Telephone Number
    E-mail Address *(if known)*

## II.  Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[X] Federal question          [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.  If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

14th Amendment of US Constitution
Equal Protection Clause of US Constitution
5th Amendment of US Constitution

### B.  If the Basis for Jurisdiction Is Diversity of Citizenship

1.  The Plaintiff(s)

    a.  If the plaintiff is an individual
        The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

    b.  If the plaintiff is a corporation
        The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____,
        and has its principal place of business in the State of *(name)* _____.

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.  The Defendant(s)

    a.  If the defendant is an individual
        The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

    b.      If the defendant is a corporation

           The defendant,  *(name)* _____, is incorporated under

           the laws of the State of *(name)* _____, and has its

           principal place of business in the State of *(name)* _____

           Or is incorporated under the laws of *(foreign nation)* _____,

           and has its principal place of business in *(name)* _____.

           *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

    3.     The Amount in Controversy

           The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

plaintiff was not allowed to cross road block as other white individuals were, threatend with arrest when he asked why

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

stated in complaint  $315,000

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 8 / 28 / 17

Signature of Plaintiff

Printed Name of Plaintiff     Richard Bibbs

### B. For Attorneys

Date of signing: 8 / 28 / 17

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
Beckley Division

FILED

AUG 2 8 2017

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

RICHARD BIBBS,                                              )
                                                           )
Plaintiff,                                                 )
                                                           )
v.                                                         ) Civil Action No.: 2:17-3885
                                                           )
National Park Service,                                     )
Superintendant Lizzie Watts &                              )
Unknown Park Rangers A & B                                 )
Each individually and in their official capacity as        )
Employees of NPS

And

Fayette County Sherriff's Department,                      )
Sheriff Michael Fridley                                    )
Deputy E.A. Shrewsbury                                     )
Each individually and in their official capacity as        )
Employees of FCSD                                          )
                                                           )
Defendants                                                 )

## COMPLAINT

The Pro Se plaintiff, Richard Bibbs, moves the Court for entry of judgment in his favor
against the above named defendants for the allegations described herein and in support of his
complaint avers as follows:

## SUMMARY

1. Plaintiff Richard Bibbs (hereafter referred to as Plaintiff) was detained (not allowed
   to pass through a roadblock) by two National Park Service Rangers (Ranger A and
   Ranger B) for no reason other than his race. Ranger A allowed a white female to pass

1

through the road block who had previously been detained. Other vehicles operated by white individuals were also allowed to pass through the roadblock while plaintiff was detained. When plaintiff questioned the Rangers why he could not pass and others had, the Rangers summoned 2 Fayette County deputies who accused the plaintiff of being "hostile" and without provocation or reason immediately threatened in an intimidating and forceful manner to arrest the Plaintiff if he did not leave the scene and "go home". Once he left and went home Officer Shrewsbury taunted the plaintiff while walking back to his post/location.

## NATURE OF ACTION

2.  This is a civil action under 42 U.S.C § 1983 seeking damages and injunctive relief against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiff of rights secured under the 14th Amendment, 5th Amendment and Equal Protection Clause of the Constitution and laws of the United States; defendants refused to allow plaintiff, a black male, to go through a roadblock but allowed white individuals to pass through, and when plaintiff questioned their actions defendants threatened to arrest plaintiff in retaliation for his questioning their unlawful actions and because he exercised his constitutionally protected free speech; and for refusing or neglecting to prevent such deprivations and denials to Plaintiff.

## JURY TRIAL

3.  Plaintiff Bibbs demands a jury trial.

## PARTIES

4.  Plaintiff is an individual and resides in Glen Jean, Fayette County in the State of West Virginia.

5. Defendant National Park Service is a Federal agency [entity] which operates and employs Superintendant Watts and unknown Rangers A, B, and C at the National Park Service facility in Glen Jean, W.Va.

6. Defendant Lizzie Watts is the Superintendant of the National Park Service facility located in Glen Jean, W. Va. and is named in her official and individual capacity. Upon information and belief, this defendant resides within the State of West Virginia.

7. Defendant [1]Ranger A is a Park Ranger with the National Park Service and is named in his official and individual capacity. Upon information and belief, this defendant resides within the State of West Virginia.

8. Defendant Ranger B is a Park Ranger with the National Park Service and is named in his official and individual capacity. Upon information and belief, this defendant resides within the State of West Virginia.

9. Defendant Fayette County Sherriff Department (hereafter FCSD) is an entity of the city of Fayetteville and incorporated under the laws of the State of West Virginia which operates and employs all officers/deputies of the Fayette County Sherriff Department.

10. Defendant Sherriff Fridley is the Sherriff of the FCSD and is named in his official and individual capacity. Upon information and belief, this defendant resides within the State of West Virginia.

11. Defendant Deputy Ethan Shrewsbury is a deputy with the FCSD and is named in his official and individual capacity, and for identification purposes was the deputy who threatened to arrest the plaintiff without legal justification due to plaintiff's race and

---

[1] Plaintiff requested the names of the rangers in question during a meeting with Superintendant Watts but the names were not provided although Watts knew their names at the time of the meeting.

taunted plaintiff afterward. Upon information and belief, this defendant resides within the State of West Virginia.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 USC § 1331, on the basis of there being a federal question relating to the U.S. Constitution. See *Bivens v. Six Unknown Narcotics Agents,* 403 U.S. 388 (1971).

13. This Court also has subject matter jurisdiction under 28 USC § 1331, on the basis of there being a federal question relating to 42 USC § 1983.

14. This Court also has diversity jurisdiction, as the amount of the controversy exceeds $75,000.00

15. Venue is appropriate because all defendants are within the district boundaries for this Court, and because all of defendants, whose identities will be determined via discovery, are employed by the NPS or FCSD and all defendants live in or near this Court's district.

## ALLEGATIONS OF FACT

16. The following events occurred Monday July 24, 2017 between 5/5:30 and 6/6:30 pm.

17. Plaintiff lives in the city of Glen Jean near Main Street which runs directly into the Boy Scout camp where President Trump was planning a visit on July 24, 2017.

18. Plaintiff noticed his neighbor's daughter, Stephanie Armstrong leaving Bibbs Street and she was turned around by Park Ranger A, who had blocked the intersection at Ferri Road and Main Street and did not allow her to pass. Upon information and belief this may have been around 5/5:30 p.m.

4

19. After witnessing this Plaintiff rode a bicycle around the road to see what was going on and Park Ranger A did not stop him from proceeding through the roadblock.

20. Plaintiff rode up the street and talked with Park Ranger C who was at the intersection of Main Street and a bridge that goes to Harvey. He told plaintiff Trump was coming to the Boy Scout camp. Plaintiff stated he had someplace to be at 7:00 and was informed that if he planned on getting there that he should leave right away because later he would be blocked in.

21. Plaintiff immediately rode home and loaded his bike in his car and proceeded to the roadblock where Ranger A was stationed. It may have taken 5-7 minutes to load the bike. In this time-span Ms. Armstrong, a white female was permitted to pass through the roadblock.

22. When Plaintiff approached the road block Ranger A informed him that he could not pass, that all traffic is blocked indefinitely until the president passes through, although he had allowed Ms. Armstrong to pass minutes earlier.

23. Plaintiff explained to Ranger A what Ranger C had told him 5-7 minutes earlier.

24. Plaintiff was disturbed by this and informed the ranger that he had someplace to be.

25. Ranger A told the Plaintiff he would have to wait indefinitely and then told Plaintiff to move my vehicle further back from the roadblock to which Plaintiff complied.

26. Plaintiff's neighbor Lisa Williams asked Plaintiff (from her porch about 15-20 feet away) what was going on and Plaintiff replied (loud enough for her to hear him but not yelling) "That I was not going to be allowed to pass but at least I had not been shot."

5

27. Then Ranger A calls Ranger B, who was stationed farther up the street who walks to the roadblock and questions Plaintiff about what's going on and Plaintiff explains he is trying to get someplace.

28. Ranger B tells Plaintiff basically the same thing Ranger A told him, that the road was closed and <u>nobody</u> could pass and offered to provide Plaintiff with phone numbers with which Plaintiff could file a complaint if he wished and Plaintiff informed him he didn't want to waste time filing complaints.

29. By this time Plaintiff had moved his car as requested by the Rangers and complied with whatever "commands" he was given and was somewhat upset but not "hostile."

30. While standing outside his car conversing with the Ranger B Plaintiff sees a lone unmarked vehicle that has been allowed to pass through the roadblock up the road at the bridge entering into Glen Jean coming in their direction.

31. Plaintiff then asks Ranger B why this vehicle is allowed to pass and Plaintiff cannot, and Ranger B replies, "that's the Secret Service" to which Plaintiff replied "that's Bullshit, that's boyscouts." There appeared to be several white males in the car but they were not secret service.

32. Plaintiff was bothered by this reply because it appeared that Ranger B thought he was stupid and would not know the vehicle was not secret service and that Ranger B appeared irritated when Plaintiff questioned the validity of his response.

33. Up to this point in time Plaintiff had obeyed all requests and was not presenting any kind of threat to anyone.

34. Plaintiff stated that he would just wait as requested, as other individuals had been allowed to do and watch to see if any other vehicles were allowed to pass.

6

35. Then Ranger A calls 2 Fayette County deputies who walk down to the roadblock and begin to question Plaintiff in an aggressive manner. Deputy Shrewsbury asked the plaintiff what the problem was ?

36. Plaintiff replied, "There is no problem and that he had complied with all of the Rangers requests, which up to that point in time was to move his vehicle back from the roadblock, which Plaintiff had done.

37. Deputy Shrewsbury immediately accused the plaintiff of being "hostile" upon his arrival and was very aggressive and disrespectful.

38. Deputy Shrewsbury then threatened to arrest Plaintiff if he did not get in my car and go home although he provided no reason for requesting him to do so other than that Plaintiff appeared to be hostile.

39. Plaintiff, fearful of unwarranted violence or incarceration from the deputies, assumed that after having been unjustly described as "hostile" he should leave rather than risk his life or bodily harm and being accused of resisting arrest.

40. When Plaintiff requested Shrewsbury's name and badge number he provided it and told plaintiff sarcastically to "make sure and spell it right."

41. Plaintiff could see Shrewsbury and the other officer walking back to wherever they came from and while walking back  (the road they were on is across from an empty lot from the house plaintiff lives in and visible) Shrewsbury mockingly waved at Plaintiff  to harass him.

42. Ms. Williams had informed Plaintiff later that during the time Plaintiff was speaking with Rangers A and B that Trumps plane had not even landed and that several other

cars had been allowed to pass through the roadblock going to the BSA camp prior to the motorcade.

43. Plaintiff has experienced other discriminatory treatment from defendants National Park Service.

44. Plaintiff has experienced other discriminatory treatment from defendant FCSD.

45. [2]On September 16, 2015, Plaintiff was involved in a traffic accident and questioned Officer Andrew Hudson's decision not to ticket a driver who had committed clear violation and was told "to be quiet and go home".

46. Officer Hudson also called the Plaintiff an "asshole" when he thought the Plaintiff was attempting to get his badge number.

## CITATION TO LEGAL AUTHORITY

Courts have required plaintiffs to "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." In ¶1 of his complaint, the "Summary" provides an overview of the basis for plaintiff's 14th & 5th  Amendment and Equal Protection claims/violations covered by 42 USC 1983. The following citations to legal authority support the legal basis of the plaintiff's allegations.

¶ 1, Summary, "Plaintiff Richard Bibbs (hereafter referred to as Plaintiff) was detained (not allowed to pass through a roadblock/freedom from bodily restrain) by two National Park Service Rangers (Ranger A and Ranger B) for no reason other than his race. *These actions by the named defendants constitute a violation of The Due Process Clause of the Fourteenth*

---

[2] This behavior exhibits a pattern and practice of discriminatory treatment of minorities, a lack of training, and general disregard of equal treatment under the law due to plaintiff's treatment and the manner the accident was reported and submitted by Hudson.

*Amendment protects prisoners [or individuals] from being deprived of life, liberty, or*

*property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974).*

¶ 22.When Plaintiff approached the road block Ranger A informed him that he could not

pass, that all traffic is blocked indefinitely until the president passes through, although he had

allowed Ms. Armstrong to pass minutes earlier. ¶ 21 …Ranger A allowed a white female to

pass through the road block who had previously been detained. ¶ 31…Other vehicles

operated by white individuals were also allowed to pass through the roadblock while plaintiff

was detained." *In order to state a § 1983 claim based on a violation of the Equal Protection*

*Clause of the Fourteenth Amendment, a plaintiff must show that defendants acted with*

*intentional discrimination against plaintiff or against a class of inmates which included*

*plaintiff. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (equal protection claims*

*may be brought by a "class of one")* and *Equal protection claims arise when a charge is*

*made that similarly situated individuals are treated differently without a rational relationship*

*to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1*

*(1972).*

¶ 25, Allegation of Facts Plaintiff's neighbor Lisa Williams asked Plaintiff (from her

porch about 15-20 feet away) what was going on and Plaintiff replied (loud enough for her to

hear him but not yelling) "That I was not going to be allowed to pass but at least I had not

been shot." *566  had alleged an extra factor as well-a factor that the Court of Appeals called*

*"vindictive action," "illegitimate animus," or "ill will."* 160 F.3d 386, *388 (CA7 1998). And,*

*in that respect, the court said this case resembled Esmail v. Macrane,* 53 F.3d 176

*(CA71995), because the Esmail plaintiff had alleged that the municipality's differential*

9

*treatment "was the result not of prosecutorial discretion honestly (even if ineptly-even if arbitrarily) exercised but of an illegitimate desire to 'get' him." 160 F. 3d, at 388.*

¶ 30, Allegation of Fact, Plaintiff then asks Ranger B why this vehicle is allowed to pass and Plaintiff cannot, and Ranger B replies, "that's the Secret Service" to which Plaintiff replied "that's Bullshit, that's boyscouts." There appeared to be several white males in the car but they were not secret service. *Plaintiff has adduced facts which, if proven, could establish that Plaintiff's speech was a substantial or motivating factor in the alleged retaliatory action. Larsen, 154 F.3d at 93-94 (3d Cir. 1998) (citing Feldman v. Philadelphia Hous. Auth., 43 F.3d 823, 829 (3d Cir. 1994)).*

The facts show that the plaintiff had a reasonable expectation to be allowed to proceed through the roadblock as at least 2 other individuals vehicles, containing whites, had been allowed to do so and considering he was not allowed to proceed, had a legitimate and constitutionally protected right to ask the NPS Rangers why not, but because of his sarcastic response about "not being shot" and response of "bullshit" to Ranger B's blatant lie about the secret service vehicle he was subjected to retaliation via the rangers calling the deputies and their intentional failure to interject when defendant Shrewsbury began his discriminatory tirade. Whether the Rangers summoned the deputies or intentionally failed to explain to the deputies upon their arrival that the plaintiff had not disobeyed any instruction, broken any law or made any threatening gestures or remarks, the threat of arrest or demand to leave the area (when other white individuals along the route were allowed to stay and watch the motorcade) were not justified. In so doing, the Rangers placed the plaintiff in an unwarranted dangerous situation with the deputies. It is a well-known fact in the black community that being a black man and being unjustly described as "hostile" could be the impetus for a deadly

10

encounter with untrained/racist or nervous police officers. *Section 1983 plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v.Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976)*

¶ 34 thru 41 describe plaintiff's interaction with Deputy Shrewsbury and Jensen. When plaintiff questioned the Rangers [free speech] why he could not pass and others had [discriminatory treatment], upon information and belief the Rangers summoned 2 Fayette County deputies one of whom immediately accused the plaintiff of being "hostile" and without provocation or reason immediately threatened in an intimidating and forceful manner to arrest the Plaintiff if he did not leave the scene and "go home". *"Plaintiff has a clearly established right under the First Amendment to be free of retaliation for speech. Governmental action designed to retaliate against and chill expression strikes at the heart of the First Amendment". Larsen v. Senate of Com. of Pa., 154 F.3d 82, 93-94 (3d Cir.1998);*

¶ 36.Deputy Shrewsbury accused the plaintiff of being "hostile" upon his arrival and was very aggressive and disrespectful. *"[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson at 743-44).*

¶ 37.Deputy Shrewsbury then threatened to arrest Plaintiff if he did not get in my car and go home although he provided no reason for requesting him to do so other than that Plaintiff appeared to be hostile and irritated. *"Grace Olech, Plaintiff-appellant, v. Village of Willowbrook, et al., Defendants-appellees, 160 F.3d 386 (7th Cir. 1998) "In Esmail v. Macrane, 53 F.3d 176 (7th Cir. 1995), we held that the equal protection clause provides a*

*remedy when "a powerful public official picked on a person out of sheer vindictiveness." Id. at 178. Although the clause is more commonly invoked on behalf of a person who either belongs to a vulnerable minority or is harmed by an irrational difference in treatment, it can also be invoked, we held, by a person who can prove that "action taken by the state, whether in the form of prosecution or otherwise, was a spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective." Id. at 180. See also Indiana State Teachers Ass'n v. Board of School Commissioners, 101 F.3d 1179, 1181-82 (7th Cir. 1996); Ciechon v. City of Chicago, 686 F.2d 511, 522-24 (7th Cir. 1982); Batra v. Board of Regents, 79 F.3d 717, 721-22 (8th Cir. 1996); Yerardi's Moody Street Restaurant & Lounge, Inc. v. Board of Selectmen, 932 F.2d 89, 94 (1st Cir. 1991); LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980)*

38.Plaintiff, fearful of unwarranted violence, bodily harm or unlawful incarceration from the deputies assumed that after having been unjustly described as "hostile" he should leave rather than risk his life and possible bodily harm resulting from being  accused of resisting arrest. *Section 1983 claims and cases can be brought when the government creates or created the danger to an individual or a group of individuals*

¶ 40.Plaintiff could see Shrewsbury and the other officer walking back to wherever they came from and while walking back  (the road they were on is across from an empty lot from the house plaintiff  lives in and visible) Shrewsbury mockingly waved at Plaintiff  to further harass him. *564  holding that a plaintiff can allege an equal protection violation by asserting that state action was motivated solely by a "'spiteful effort to "get" him for reasons wholly unrelated to any legitimate state objective.'"* <u>160 F.3d 386</u>*, 387 (1998) (quoting Esmail v. Macrane, 53 F. 3d 176, 180 (CA7 1995)).*

In ¶ 20 it states, "Plaintiff rode up the street and talked with Park Ranger C who was at the intersection of Main Street and a bridge that goes to Harvey. He told plaintiff Trump was coming to the Boy Scout camp. Plaintiff stated he had someplace to be at 7:00 and was informed that if he planned on getting there that he should leave right away because later he would be blocked in."

Based upon the conversation he had with Ranger C, the fact that at least 2 vehicles containing white individuals were allowed to pass through the roadblock and that trumps plane had not even landed in Beckley airport at the time this incident occurred, the plaintiff should have been allowed to proceed as others had. In ¶ 42 plaintiff states, "Ms. Williams had informed Plaintiff later that during the time Plaintiff was speaking with Rangers A and B that Trumps plane had not even landed and that several other cars had been allowed to pass through the roadblock going to the BSA camp prior to the motorcade."

Deputy Jensen's failure to act to stop Shrewsbury could indicate he was not properly trained and did not know what to do or did not feel the need to act. "A person deprives another of a constitutional right, where that person 'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).

With respect to supervisor liability, Superintendant Watts took no action to investigate plaintiff's complaint for 2 weeks, and then-stone walled plaintiff's request for Ranger statements in order for the plaintiff to determine if there was some reason for their actions other than racism and avoid this legal action. Plaintiff has attached Exhibit 1 that describes his meeting with her. Likewise, plaintiff reached out to Sherriff after a conversation with

13

Officer Perdue that is described in the same exhibit and as with Watts, was more concerned with how plaintiff felt about police than the discrimination he had alleged within the FCSD and the utterance of racial slurs as the only probative evidence of discrimination by an officer. *"To state a claim for relief under section 1983 for supervisory liability, plaintiff must allege some facts indicating that the defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"* Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

## CONCLUSION

"Although the Court has not assumed to define 'liberty' with any great precision, that term is not confined to mere freedom from bodily restraint. Liberty under law extends to the full range of conduct which the individual is free to pursue, and it cannot be restricted except for a proper governmental objective. "70 347 U.S. 483 (1954).

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for the following relief:

a) Actual and punitive damages against the Fayette County Sherriff Department and National Park Service of $100,000.00 each.

b) Actual and punitive damages against Superintendant Watts $50,000.00.

c) Actual and punitive damages against Sherriff M. Fridley $50,000.00.

d) Actual and punitive damages against Ranger A, Ranger B and Deputy Shrewsbury $15,000 each.

e) Any other such relief as the court deems appropriate.

14

CERTIFICATION : I hereby certify that all the statements contained herein are true and correct to the best of my knowledge and that the allegations contained herein are not frivolous in nature, intended to harass or without merit.

Respectfully Submitted,

*Richard Bibbs*          8/28/17

Richard Bibbs, Pro Se Plaintiff

15