## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

RICHARD BIBBS,

                    Plaintiff,

v.                                                    CIVIL ACTION NO.   2:17-cv-03885

NATIONAL PARK SERVICE, et al.,

                    Defendants.

### PROPOSED FINDINGS & RECOMMENDATION

        This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United

States District Judge, and it is referred to the undersigned United States Magistrate Judge

for submission of proposed findings and recommendations for disposition pursuant to 28

U.S.C. § 636(b)(1)(B).   (ECF No. 3.)   Before this Court are the motions to dismiss filed

by Defendants Fayette County Sheriff's Department ("FCSD") and Sheriff Michael Fridley

("Fridley") (ECF No. 19) and by Defendants National Park Service ("NPS"), Lizzie Watts

("Watts"), and Unknown Park Rangers A & B (separately, "Ranger A" and "Ranger B")

(ECF No. 25).   Also before this Court is Plaintiff Richard Bibbs's ("Plaintiff") motion to

amend his complaint.   (ECF No. 30.)   For the reasons explained more fully herein, it is

respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the motion to

dismiss filed by FCSD and Fridley (ECF No. 19); **GRANT** the motion to dismiss filed by

NPS, Watts, Ranger A, and Ranger B (ECF No. 25); **DISMISS** Plaintiff's claims against

Shrewsbury for failure to state a claim upon which relief may be granted pursuant to 28

U.S.C. § 1915(e)(2)(B)(ii); and **DENY** Plaintiff's motion to amend the complaint (ECF No.

30).

## I.    BACKGROUND

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that his constitutional rights were violated when he was prohibited from passing through a roadblock.    (ECF No. 2 at 8, 10.)    Plaintiff avers that on July 24, 2017, the President of the United States was planning to visit a Boy Scout camp located near Plaintiff's home in Glen Jean, Fayette County, West Virginia.    (*Id.* at 10.)    He claims that around 5:00 or 5:30 in the evening, his neighbor's daughter attempted to leave their street but was turned around by Ranger A, who had blocked a nearby intersection.    (*Id.*)

Wanting "to see what was going on," Plaintiff rode his bicycle through the roadblock without being stopped by Ranger A.    (*Id.* at 11.)    He spoke with Ranger C, who was stationed at a different intersection than Ranger A, and Ranger C told Plaintiff that the president was coming to the Boy Scout camp.    (*Id.*)    Plaintiff stated to Ranger C that "he had someplace to be at 7:00," and Ranger C informed him "that if he planned on getting there that he should leave right away because later he would be blocked in." (*Id.*)

Plaintiff then rode his bike back to his house, loaded his bike in his car, and drove to the roadblock where Ranger A was stationed.    (*Id.*)    In the meantime, Ranger A had allowed Plaintiff's neighbor's daughter, a white female, to pass through the roadblock. (*Id.*)    However, Ranger A did not allow Plaintiff to pass through the roadblock and informed him "that all traffic is blocked indefinitely until the president passes through." (*Id.*)    Ranger A instructed Plaintiff to move his vehicle away from the roadblock, and Plaintiff complied.    (*Id.*)    When Plaintiff's neighbor asked Plaintiff "what was going on," Plaintiff loudly replied, "That I was not going to be allowed to pass but at least I had not

been shot." (*Id.*)  Upon hearing Plaintiff's comment, Ranger A called Ranger B, "who was stationed farther up the street," and Ranger B walked toward Plaintiff to ask him "about what's going on." (*Id.* at 12.)  Ranger B told Plaintiff "basically the same thing Ranger A told him . . . and offered to provide Plaintiff with phone numbers with which Plaintiff could file a complaint if he wished." (*Id.*)  Plaintiff told Ranger B that "he didn't want to waste time filing complaints." (*Id.*)

While speaking with Ranger B, Plaintiff saw "a lone unmarked vehicle" that contained "several white males" pass through a different roadblock. (*Id.*)  When Plaintiff asked Ranger B "why this vehicle is allowed to pass and Plaintiff cannot," Ranger B replied, "that's the Secret Service." (*Id.*)  Plaintiff commented, "that's Bullshit, that's boyscouts [sic]." (*Id.*)  Plaintiff then told Ranger B "that he would just wait as requested, as other individuals had been allowed to do and watch to see if any other vehicles were allowed to pass." (*Id.*)

At this time, Ranger A called two FCSD deputies, including Shrewsbury, who "walk[ed] down to the roadblock and beg[a]n to question Plaintiff in an aggressive manner." (*Id.* at 13.)  Shrewsbury asked Plaintiff "what the problem was." (*Id.*)  Plaintiff told Shrewsbury that there was "no problem" and stated that he had complied with Ranger A's request to move his vehicle away from the roadblock. (*Id.*)  According to Plaintiff, Shrewsbury "was very aggressive and disrespectful" and accused Plaintiff "of being 'hostile.'" (*Id.*)  Shrewsbury "threatened to arrest Plaintiff if he did not get in [his] car and go home." (*Id.*)  Plaintiff was "fearful of unwarranted violence or incarceration" and decided "he should leave rather than risk his life or bodily harm and being accused of resisting arrest." (*Id.*)  He asked Shrewsbury for his name and badge number, which Shrewsbury provided "and told plaintiff sarcastically to 'make sure and

spell it right.'" (*Id.*)   Shrewsbury and the other FCSD deputy then walked "back to wherever they came from," and "Shrewsbury mockingly waved at Plaintiff to harass him." (*Id.*)

Later, Plaintiff's neighbor told him that during this series of incidents, the president's "plane had not even landed," and several other cars had been allowed to pass through the roadblock.   (*Id.* at 13–14.)

Plaintiff filed this action on August 28, 2017.   (ECF No. 2.)   FCSD and Fridley filed their motion to dismiss on June 24, 2019.   (ECF No. 19.)   Plaintiff filed a response (ECF No. 23), and FCSD and Fridley filed a reply (ECF No. 24).   NPS, Watts, Ranger A, and Ranger B filed their motion to dismiss on September 3, 2019.   (ECF No. 25.) Plaintiff filed a response (ECF No. 29), but NPS, Watts, Ranger A, and Ranger B did not file a reply.   Plaintiff filed his motion to amend on October 2, 2019.   (ECF No. 30.) NPS, Watts, Ranger A, and Ranger B filed a response (ECF No. 33), as did FCSD and Fridley (ECF No. 34).   Plaintiff did not file a reply.   As such, the motions are fully briefed and ready for resolution.

## II.    LEGAL STANDARDS

### A.  Motion to Dismiss

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).   However, to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief

that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss. *Id*. at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id*. Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id*. "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

B. *Review of Complaint Pursuant to 28 U.S.C. § 1915(e)*

Where, as here, a plaintiff seeks to proceed *in forma pauperis*, this Court has a duty to "screen initial filings . . . to independently assess the merits of *in forma pauperis*

complaints" and "exclude suits that have no arguable basis in law or fact." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006) (citing *Nasim v. Warden*, 64 F.3d 951, 953–54 (4th Cir. 1995)); *see* 28 U.S.C. § 1915(e).    This Court must "dismiss a complaint filed *in forma pauperis* 'at any time if [it] determines that . . . the action or appeal . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted.'" *Eriline Co.*, 440 F.3d at 656 (quoting 28 U.S.C. § 1915(e)).    When reviewing an *in forma pauperis* complaint for failure to state a claim, this Court applies the same standards that it applies to review a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6). *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (citing *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003)).    This Court construes a *pro se* plaintiff's allegations "liberally," but the complaint must nonetheless "contain enough facts to state a claim for relief that is plausible on its face."    *Id.* (internal quotation marks omitted).

## C.  Motion to Amend

"[T]he grant or denial of an opportunity to amend [the complaint] is within the discretion of the district court."    *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (internal quotation marks omitted).    This Court "should freely give leave when justice so requires."    Fed. R. Civ. P. 15(a)(2).    However, it "may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile."    *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc)); *see Drager*, 741 F.3d at 474 (clarifying that "[a] district court's denial of leave to amend is appropriate" only under these three circumstances).    As relevant here, "[a] proposed amendment is futile when it is clearly insufficient or frivolous

on its face" or "if the claim it presents would not survive a motion to dismiss."  *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) (internal quotation marks omitted).

## III.    ANALYSIS

### A.  *FCSD's and Fridley's Motion to Dismiss (ECF No. 19)*

FCSD and Fridley argue that Plaintiff's complaint fails to state a claim against them because it does not allege any facts against them.    (ECF No. 20.)    Indeed, as to FCSD, the complaint alleges that FCSD "is an entity of the city of Fayetteville and incorporated under the laws of the State of West Virginia which operates and employs all officers/deputies of the [FCSD]."    (ECF No. 2 at 9.)    The complaint also alleges that "Plaintiff has experienced other discriminatory treatment from defendant FCSD" but does not elaborate on the allegedly discriminatory treatment.    (*Id*. at 14.)    And as to Fridley, the complaint alleges that he "is the Sherriff [sic] of the FCSD and is named in his official and individual capacity."    (*Id*. at 9.)

Essentially, Plaintiff's claims against FCSD and Fridley amount to an effort to hold them liable for Shrewsbury's actions.    (*See* ECF No. 23 at 1–2.)    However, this is not a proper basis for 42 U.S.C. § 1983 liability.    *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) ("The doctrine of respondeat superior has no application under [§ 1983]." (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977))); *see Hunter v. Town of Mocksville*, 897 F.3d 538, 553 (4th Cir. 2018) (stating that defendant "cannot be held liable *solely* because it employs a tortfeasor" (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)) (emphasis in original)).    In order to state a § 1983 claim against FCSD, the complaint must allege that the "execution of [FCSD's] policy or custom . . . inflict[ed] the injury."    *Hunter*, 897 F.3d at 554 (quoting *Monell*, 436 U.S. at 694).    Plaintiff's

complaint does not allege any facts against FCSD at all, let alone facts suggesting the existence of a policy or custom that resulted in Shrewsbury's allegedly unconstitutional actions.   (ECF No. 2.)

Similarly, in order to state a § 1983 claim against Fridley, the complaint must allege facts showing that Fridley "acted personally in the deprivation of [Plaintiff's] rights." *Wilcox*, 877 F.3d at 170 (quoting *Vinnedge*, 550 F.2d at 928).   But again, the complaint is wholly devoid of allegations relating to Fridley's conduct.   (ECF No. 2.)   In his response in opposition to FCSD's and Fridley's motion to dismiss, Plaintiff contends that on July 25, 2017, he "officially filed a complaint of racial discrimination regarding the conduct of the officers named in the complaint with Sherriff [sic] Fridley" but "never heard anything."   (ECF No. 23 at 2.)   However, these assertions are not part of the complaint, and even if they were, they do not create a causal link between Fridley and Shrewsbury's alleged deprivation of Plaintiff's constitutional rights.

Accordingly, the undersigned respectfully **RECOMMENDS** that FCSD's and Fridley's motion to dismiss (ECF No. 19) be **GRANTED**.

B. *NPS's, Watts's, Ranger A's, and Ranger B's Motion to Dismiss (ECF No. 25)*

NPS argues that the claims against it must be dismissed because claims against federal agencies are not cognizable under *Bivens*.   (ECF No. 26 at 6.)   Indeed, "a *Bivens* action does not lie against either agencies or officials in their official capacity."   *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002) (emphasis deleted) (citing *FDIC v. Meyer*, 510 U.S. 471, 484–86 (1994); *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996)).   As such, the undersigned **FINDS** that Plaintiff's claims against NPS and against Watts, Ranger A, and Ranger B in their official capacities[1]  are due to be dismissed.

---

[1] The motion to dismiss also argues that Plaintiff's complaint should be dismissed as to Ranger C because

Likewise, Watts argues that the claims against her should be dismissed because "supervisory liability is not applicable in *Bivens* claims," and Plaintiff has not alleged any facts to suggest her personal, non-supervisory role in the alleged deprivation of Plaintiff's constitutional rights.    (ECF No. 26 at 6.)    To the extent *Bivens* supervisory liability claims continue to be viable, *see Ashcroft v. Iqbal*, 556 U.S. 662, 693 (2009) (Souter, J., dissenting) ("[T]he majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely."), Plaintiff's complaint fails to allege such a claim.    Plaintiff alleges only that Watts "took no action to investigate plaintiff's complaint for 2 weeks, and then[ ]stone walled plaintiff's request for Ranger statements." (ECF No. 2 at 19.)[2]    But a supervisor's alleged failure to investigate a single instance of allegedly unconstitutional conduct by her subordinate fails to demonstrate the causal link necessary to establish supervisory liability.    *Lavender v. City of Roanoke Sheriff's Office*, 826 F. Supp. 2d 928, 935–36 (W.D. Va. 2011); *see Iqbal*, 556 U.S. at 677 (majority opinion) ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. . . . [P]urpose rather than knowledge is required to impose *Bivens* liability . . . for an official charged with violations arising from his or her superintendent responsibilities.").    Accordingly, the undersigned **FINDS** that Plaintiff's claims against Watts should be dismissed.

Ranger A and Ranger B argue that Plaintiff's claims against them must be dismissed because the complaint fails to allege "substantive discriminatory conduct" and because *Bivens* does not provide a remedy for their allegedly unconstitutional actions.

---

Plaintiff "has not plead any specific conduct by Ranger C that is alleged to have violated plaintiff's constitutional rights."    (ECF No. 26 at 6.)    The reason for this is that Plaintiff has not named Ranger C as a defendant in this action.    (ECF No. 29 at 2; ECF No. 2 at 2–3, 7.)

2  The complaint avers, "Plaintiff has attached Exhibit 1 that describes his meeting with [Watts]."    (ECF No. 2 at 19.)    However, there is no exhibit attached to the complaint.

(ECF No. 26 at 6–10.)    The former argument is without merit.    Plaintiff has alleged that his neighbor's daughter, a white female, was permitted to pass through the roadblock, but he, a black male, was not.    (*See* ECF No. 2.)    This disparate treatment, which Plaintiff alleges was based on his race (*see id.* at 15), is the hallmark of an equal protection claim. *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 825 (4th Cir. 1995) ("[A]n equal protection claim must be rooted in an allegation of unequal treatment for similarly situated individuals . . . ."); *Phillips v. Thaxton*, No. 2:13-cv-16975, 2013 WL 8292680, at *4 (S.D.W. Va. Oct. 25, 2013) ("To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001))), *adopted by* 2014 WL 1572646 (S.D.W. Va. Apr. 18, 2014).

The latter argument fares better.    "*Bivens* recognized an implied cause of action to remedy a constitutional violation" committed by federal government officials.    *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017).    But "expanding the *Bivens* remedy is now a 'disfavored' judicial activity."    *Id.* at 1857 (quoting *Iqbal*, 556 U.S. at 675).    *Bivens* is not coextensive with 42 U.S.C. § 1983.    *See id.* at 1855.    As such, this Court must carefully ascertain "whether a *Bivens* remedy is available against federal officials."    *Tun-Cos v. Perrotte*, 922 F.3d 514, 522 (4th Cir. 2019).

First, this Court asks "whether a given case presents a 'new *Bivens* context,'" *i.e.*, whether it is "'different in [any] meaningful way' from the three cases in which the [Supreme] Court has recognized a *Bivens* remedy."    *Id.* at 522–23 (quoting *Abbasi*, 137 S. Ct. at 1859).    Those three cases represent "a claim against FBI agents for handcuffing a man in his own home without a warrant," *Bivens*, 403 U.S. 388, "a claim against a

Congressman for firing his female secretary," *Davis v. Passman*, 442 U.S. 228 (1979), "and a claim against prison officials for failure to treat an inmate's asthma," *Carlson v. Green*, 446 U.S. 14 (1980).   *Abbasi*, 137 S. Ct. at 1860.   The inquiry is assessed at a high level of specificity, and the fact that the plaintiff's claim arises under the same constitutional provision as the claim in *Bivens*, *Davis*, or *Carlson* does not render those claims the same.   *See Abbasi*, 137 S. Ct. at 1860; *see also Meyer*, 510 U.S. at 484 n.9 ("[A] *Bivens* action alleging a violation of the Due Process Clause of the Fifth Amendment may be appropriate in some contexts, but not in others."); *Doe v. United States*, 381 F. Supp. 3d 573, 612 (M.D.N.C. 2019) ("*Bivens* actions are not recognized Amendment by Amendment in a wholesale fashion." (quoting *Wilson v. Libby*, 498 F. Supp. 2d 74, 86 (D.D.C. 2007))).   Plaintiff's claims against Ranger A and Ranger B, which allege that the two NPS rangers racially discriminated against him by not permitting him to pass through a roadblock, "bear little resemblance to" the claims alleged in *Bivens*, *Davis*, and *Carlson*. *Abbasi*, 137 S. Ct. at 1860.   As such, the undersigned **FINDS** that Plaintiff's claims present "a new *Bivens* context."   *Id.*

Next, this Court must "determin[e] whether 'special factors' are present to counsel hesitation in expanding *Bivens*."   *Tun-Cos*, 922 F.3d at 523; *see Abbasi*, 137 S. Ct. at 1857.   In doing so, this Court "focus[es] on whether Congress *might doubt* the need for an implied damages remedy."   *Tun-Cos*, 922 F.3d at 525 (emphasis in original) (citing *Abbassi*, 137 S. Ct. at 1858).   "Though the Supreme Court has not exhaustively enumerated special factors counselling hesitation," relevant considerations include "the existence of an alternative remedial structure," "separation-of-powers principles," prior congressional action on the subject matter, "whether [the] claim addresses individual

conduct or a broader policy question," and "whether national security is at stake." *Doe*, 381 F. Supp. 3d at 613 (quoting *Bistrian v. Levi*, 912 F.3d 79, 90 (3d Cir. 2018)).

Of these factors, the first is the most compelling. *Tun-Cos*, 922 F.3d at 526 ("[W]here Congress has provided 'an alternative remedial structure . . . that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.'" (quoting *Abbasi*, 137 S. Ct. at 1858)). And an agency's administrative process qualifies as an "alternative remedial structure" for this purpose. *See Johnson v. Johnson*, No. 1:17-cv-000608, 2018 WL 4374231, at *9 (S.D.W. Va. June 5, 2018), *adopted by* 2018 WL 3629822 (S.D.W. Va. July 31, 2018). The complaint alleges that such a remedy exists: "Ranger B . . . offered to provide Plaintiff with phone numbers with which Plaintiff could file a complaint if he wished and Plaintiff informed him he didn't want to waste time filing complaints." (ECF No. 2 at 12.) *See also* Office of Prof'l Responsibility, *File a Complaint*, Nat'l Park Serv., https://www.nps.gov/orgs/1358/submit-a-complaint.htm (last updated June 12, 2019). The fact that Plaintiff utilized the complaint process but was unsatisfied with the result (*see* ECF No. 2 at 19; *see also* ECF No. 26 at 9 n.6) does not bear on the analysis. *See Pauley* ex rel. *Asatru/Odinist Faith Cmty. v. Samuels*, No. 1:15-cv-158 Erie, 2019 WL 4600195, at *9 (W.D. Pa. Sept. 23, 2019).

Further, the weighty duty with which Ranger A and Ranger B were tasked at the time of the events alleged in the complaint—namely, ensuring the safe, speedy travel of the President of the United States to a scheduled public event within their jurisdiction (*see* ECF No. 2 at 10)—counsels against providing a *Bivens* remedy here. *See Boyle v. City of Liberty*, 833 F. Supp. 1436, 1450 (W.D. Mo. 1993) ("[T]he police certainly may form a roadblock to prohibit cars from moving on the highway while a presidential motorcade passes through an intersection. The governmental interest in national

security would outweigh the individual's right to the use of their car."). Surely officers in such a position must be permitted to exercise their discretion to determine when it is appropriate to permit vehicles to pass through a roadblock. *See Abbasi*, 137 S. Ct. at 1858 ("[T]he decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide. Those matters include the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies."). Accordingly, the undersigned **FINDS** that it is inappropriate to create a *Bivens* remedy against Ranger A and Ranger B for the facts alleged in the complaint.

As such, the undersigned respectfully **RECOMMENDS** that NPS's, Watts's, Ranger A's, and Ranger B's motion to dismiss (ECF No. 25) be **GRANTED**.

### C. *Plaintiff's Claims Against Shrewsbury*

Construing Plaintiff's complaint liberally, as this Court must, *Wilcox*, 877 F.3d at 167 ("[W]hen a plaintiff raises a civil rights issue and files a complaint *pro se*, the court must construe pleading requirements liberally."), the complaint purports to allege two claims against Shrewsbury.3 First, Plaintiff appears to allege an equal protection claim based on Shrewsbury's alleged harassment of him. (ECF No. 2 at 17–18.) Second, Plaintiff seems to allege a First Amendment retaliation claim based on Shrewsbury's threat to arrest him if he did not "go home." (*Id.* at 17.)

---

3 To date, Shrewsbury has not yet been served with process. (*See* ECF No. 16.) However, 28 U.S.C. § 1915(e)(2)(B)(ii) requires this Court to "dismiss [a] case *at any time* if [it] determines that [the complaint] fails to state a claim on which relief may be granted." This provision permits dismissal even "before the action is served upon the defendant." *Figman v. Courtnall*, No. 3:01-cv-00045, at *1 (W.D. Va. Apr. 30, 2001); *see Dickens v. WakeMed Health & Hosps., Inc.*, 746 F. App'x 232, 233 (4th Cir. 2018) (mem) (per curiam) (affirming district court's dismissal of case pursuant to § 1915(e)(2)(B) where dismissal occurred prior to "service of summons").

As to the latter claim, the complaint fails to allege the requisite causal nexus between Plaintiff's protected First Amendment activity and Shrewsbury's conduct. "In order to state a colorable retaliation claim under [§] 1983, a plaintiff must allege that (1) he engaged in protected First Amendment Activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (alterations and internal quotation marks omitted). Plaintiff alleges that he engaged in protected First Amendment activity when questioning Ranger A and Ranger B about "why he could not pass and others had." (ECF No. 2 at 17; *see id.* at 12.) However, the complaint makes clear that Ranger A called Shrewsbury over *after* Plaintiff questioned Ranger A and Ranger B, and there are no allegations to suggest that Shrewsbury heard Plaintiff's prior conversation with Ranger A and Ranger B or that his actions were otherwise based on that conversation. (*Id.* at 13.) Instead, the complaint alleges that Shrewsbury "threatened to arrest Plaintiff if he did not get in [his] car and go home" because "Plaintiff appeared to be hostile" in Shrewsbury's opinion. (*Id.*) The undersigned **FINDS** that these allegations fail to state a First Amendment retaliation claim against Shrewsbury.

Plaintiff's purported equal protection claim against Shrewsbury fails because Plaintiff has not alleged that Shrewsbury's actions were motivated by racial animus. To sufficiently plead an equal protection claim for selective law enforcement, the complaint must allege "both discriminatory effect and that the officer's action was motivated by a discriminatory purpose." *United States v. Mason*, 774 F.3d 824, 829 (4th Cir. 2014) (alteration and internal quotation marks omitted). Here, Plaintiff alleges that Ranger A and Ranger B refused to let him pass through the roadblock but allowed white individuals

to pass through.    (ECF No. 2 at 11–12.)    He does not allege that Shrewsbury participated in those decisions.    (*See id.*)    Therefore, any racial bias held by Ranger A or Ranger B cannot be attributed to Shrewsbury.    *Cf. Guethlein v. Donahoe*, 913 F. Supp. 2d 480, 488 (S.D. Ohio 2012) (explaining that retaliation claim failed because "plaintiff seeks to attribute retaliatory animus to [defendant] for the acts of another person at another location").    Nor does Plaintiff allege facts to suggest that Shrewsbury was independently motivated by racially discriminatory intent in "harass[ing]" Plaintiff by "question[ing] Plaintiff in an aggressive manner," "accus[ing] the plaintiff of being 'hostile," "threaten[ing] to arrest Plaintiff if he did not get in [his] car and go home," or "mockingly wav[ing] at Plaintiff."    (*See id.* at 13, 17–18.)    The Fourth Circuit has not recognized an equal protection claim grounded in a government official's personal animosity toward the plaintiff where that animosity is not based on the plaintiff's status as "a member of an identifiable group."    *See Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999) (citing *Esmail v. Macrane*, 53 F.3d 176, 179–80 (7th Cir. 1995)).    Accordingly, the undersigned **FINDS** that Plaintiff's complaint fails to state an equal protection claim against Shrewsbury.

As such, the undersigned **RECOMMENDS** that Plaintiff's claims against Shrewsbury should be **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

D.  *Plaintiff's Motion to Amend Complaint (ECF No. 30)*

Finally, Plaintiff seeks to amend his complaint to "assert[] a 1st Amendment violation not specifically stated but referenced in the original complaint."    (ECF No. 30 at 2.)    The proposed amendment merely adds a reference to the First Amendment without offering any additional facts in support of such a claim.    (*Id.*)    Because the

undersigned construed Plaintiff's initial complaint to assert a First Amendment claim and found the facts alleged in the complaint insufficient to establish it, the proposed amendment has no impact on the analysis contained within this Proposed Findings and Recommendation.   The undersigned therefore **FINDS** that the proposed amendment is futile.   *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) (explaining that proposed amendment futile "if the claim it presents would not survive a motion to dismiss").   Accordingly, the undersigned **RECOMMENDS** that Plaintiff's motion to amend the complaint (ECF No. 30) be **DENIED**.

## IV.    RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the motion to dismiss filed by FCSD and Fridley (ECF No. 19); **GRANT** the motion to dismiss filed by NPS, Watts, Ranger A, and Ranger B (ECF No. 25); **DISMISS** Plaintiff's claims against Shrewsbury for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); and **DENY** Plaintiff's motion to amend the complaint (ECF No. 30).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge.   Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days (filing of objections) and three (3) days (mailing) from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.   Extension of this time period may be granted by the presiding District Judge for good cause shown.

Copies of any objections shall be provided to the opposing party or, if it is represented by counsel, to its counsel, and to Judge Copenhaver.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals.    28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff and to transmit a copy to counsel of record.

ENTER:        January 3, 2020

Dwane L. Tinsley
United States Magistrate Judge